**BANKERS TRUST CO. v. HIGGINS, Collector of Internal Revenue.**

No. 125, Docket 20413.

Circuit Court of Appeals, Second Circuit.

Jan. 7, 1946.

John F. X. McGohey, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

White & Case, of New York City (Russell D. Morrill, Orison S. Marden, and Josiah Willard, all of New York City, of counsel), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the Collector of Internal Revenue from a judgment in favor of the Bankers Trust Company, as administrator c.t.a. of the Estate of Emmett A. Saunders, in the sum of $139,172.17, with interest. That sum represented an overpayment of estate taxes.

The amount of the estate taxes properly assessable in the case at bar depends on the effect to be given to the provisions of a trust deed made on August 15, 1923. Under it the decedent, Emmett A. Saunders and Louise M. Saunders, his wife, conveyed to Bankers Trust Company, as trustee, securities which were of the value at the date of the decedent's death on January 26, 1933 of $1,316,386.07. The Commissioner included this sum in the latter's estate after deducting $96,934.60 which represented the wife's contribution to the corpus of the trust, and $73, 619.55 which represented her life interest in one-half of the corpus. The balance assessed for estate taxes amounted to $1,145,831.92.

The indenture of trust provided that the trustee should hold the corpus for the lives of seventeen designated persons and during the continuance of the trust should pay the income therefrom as follows:

"1. As long as both shall live the above net income to Emmett A. Saunders and Louise M. Saunders (husband and wife and parties of the first part hereto) in equal portions to each, and after the death of one of them then all of it shall be paid to the survivor of them; and moreover, anything to the contrary in this instrument notwithstanding, in case the income shall in any year during the lives of both of them or of the life of the survivor of them be less than Sixty thousand ($60,000) Dollars, then and in that case an amount shall be taken from the principal of this trust which added to the income thereof will make Sixty thousand ($60,000) Dollars and this Sixty thousand ($60,000) Dollars, less the commission of the trustee shall be paid to them or to the survivor of them."

The plaintiff filed a Federal Estate Tax Return showing a tax due of $20,585.96 which was paid. Thereafter the Commis-

sioner by including in the estate the sum of $1,145,831.92, representing the value of the corpus of the trust at the date of decedent's death after deducting the amount of the wife's contribution and her life interest in one-half of the corpus, determined a deficiency which the plaintiff paid and thereafter sought to recover in this action. In our decision reported at 136 F.2d 477, 478, we said that:

"Saunders' death ended the power of the trustee to invade the principal to make up his share of the income to the amount fixed in the deed. While he and his wife both lived, his share was $30,000; in case he survived her, it was $60,000; in case she survived him, as she did, her share was $60,000. The remainders were therefore relieved of a burden by his death; that relief was an 'interest' which 'took effect' at that moment by increasing the remainders pro tanto, and it was proper to include it in the estate under the doctrine of Helvering v. Hallock, supra, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed 604, 125 A.L.R. 1368."

In view of the foregoing we held that the amount to be included in the estate for tax purposes was only "the present value as on January 26, 1933, of the successive invasions of the principal during his life which might be needed to make up an income of $60,000 to him."

The judgment in favor of the Collector rendered upon the first trial was reversed by our former decision and the case remanded in order to appraise the future invasions of the corpus of the trust as of the date of Saunders' death. After the new trial a judgment was entered in favor of the plaintiff in accordance with the following findings of fact and conclusions of law:

"12. The life expectancy of the decedent Emmett A. Saunders on January 26, 1933, was 3.63 years, determined under the Actuaries' or Combined Experience Table which is the table provided for in the applicable Federal Estate Tax Regulations.

"13. On January 26, 1933, the prospective annual income of the trust fund during decedent's said expectancy was 4% of the value of the trust fund on January 26, 1933, or $52,655.44 per annum, resulting in a prospective annual invasion of principal during such expectancy of $7,344.56, pursuant to paragraph 1 of Article First of said Indenture of Trust.

"14. The present worth on January 26, 1933, of the said prospective annual invasion during Mr. Saunders' expectancy was $20,278.77 computed under Table A of Article 10, Regulations 80 (1937 Edition)."

"II. The trust of August 15, 1923 should not have been included in the gross estate of Emmett A. Saunders, except to the extent of $20,278.77.

"III. Plaintiff overpaid the Federal estate tax due on the Estate of Emmett A. Saunders to the extent of $139,172.47 and said overpayment was erroneously and illegally assessed and collected."

That the judgment rendered is in accordance with our prior decision is not questioned. It is attacked only upon the ground that recent decisions of the Supreme Court require the whole corpus of the trust to be included in the gross estate of the decedent under Section 302(c) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227.

The following are the portions of Ch. 27, 44 Stat. 70, of the Revenue Act of 1926 involved in determining whether the value should be taken at the date of Saunders' death of the entire corpus of the trust or of only the calculable invasions of the corpus during his life as determinable by actuarial tables:

"Section 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

It was held that there was no transfer made in contemplation of death and that only the portion of the corpus of the trust that represented an estimated invasion of principal to the amount of $20,278.77 should be included in the decedent's gross estate as subject to estate taxes.

The defendant argues that the recent decisions of the Supreme Court in Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227; Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, and Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330, show that the rule adopted on the prior appeal has been rejected by the Supreme Court and that the judgment in conformity with our decision should, therefore, be reversed. We think this contention is not sound.

The three decisions of the Supreme Court involved situations that fell within the rule of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, and applied that rule. Each one dealt with a possibility of reversion to the settlor which would affect the entire corpus of the fund. Under such circumstances it was held that the entire principal should be included in the estate of the settlor irrespective of the improbability that any reversion would occur. The case is different where only a portion of the remainder can reasonably be said to be affected by a possible reversion to the settlor and where that portion may be appraised with reasonable certainty under well known tables and reliable methods of calculation. Such was the situation in the case at bar. It cannot be said with any sense that a man 84 years old, having an expectation of life of but 3.63 years, had an interest in the corpus of this trust that would so exhaust it that it should be included in the estate taxable on his death merely because he had a right to have payments out of principal to the extent that it might not yield sufficient income to pay him a guaranteed minimum of $60,000 per year. The argument in support of such a contention is particularly fantastic when the decedent died January 26, 1933 and the estate had actually yielded an average income of nearly $67,000 during the ten years succeeding the creation of the trust on August 15, 1923 (Plff's Exh. 5). In other words, it is sought to use a theory that is not only contrary to the demonstrated facts but from a common sense point of view only affects a small portion of the corpus.

The decisions supporting deductions of the amount of remainders to charity also justify an affirmance of the judgment below. Deductions based upon dependable actuarial calculations are allowed even though the charitable remainders may be affected by the actual survival of a beneficiary beyond the estimated period. This doctrine stems from the opinion of Justice Holmes in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, and was apparently again recognized by the Supreme Court in Merchants National Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, though the estimated deduction was not allowed in the latter case because the factors justifying an invasion of capital were too indefinite to form a basis for reliable calculation. Cf. Hanley v. United States, Ct. Cl., 63 F.Supp. 73, 82; Wells Fargo Bank & Union Trust Co. v. Commissioner of Internal Revenue, 9 Cir., 145 F.2d 132.

Judgment affirmed.