**PRITZLAFF v. KUHL, Collector of Internal Revenue.**

Civil Action No. 3832.

District Court, E. D. Wisconsin.

March 18, 1947.

Von Briesen & Von Briesen, by Ralph Von Briesen and George Redmond, all of Milwaukee, Wis., for plaintiffs.

Timothy Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., and Fred J. Neuland, Sp. Asst. to Atty. Gen., for defendant.

DUFFY, District Judge.

This is an action for refund of estate taxes alleged to have been illegally assessed against the Estate of Helen Pritzlaff, deceased.

On December 17, 1930, Helen Pritzlaff, then sixty-seven years of age, created an inter vivos trust. She transferred to the trustee assets of the value of $186,167.90. Thereafter, between April 28, 1931, and December 7, 1937, she made four additions to the corpus of the trust totalling $40,187.50.

The essential terms of the trust were:

(a) The trustee shall pay the net income of the trust to the decedent during her lifetime.

(b) The trustee could in its discretion invade the trust corpus for the benefit of the decedent, as in its judgment was necessary or requisite by reason of illness or other emergency, or inadequacy of income, for the adequate support and/or necessities of the decedent.

(c) The trust was to continue for ten years after the death of the decedent, at the end of which time the trust corpus was to be distributed in equal shares to the decedent's six children.

The trust instrument then provided as follows:

"The share of any of said beneficiaries who shall have deceased before said time of distribution shall be distributed to his lawful issue proportionately by right of representation.

"If any of said beneficiaries shall have deceased leaving no issue but shall have a widow then surviving, one-half of the share of said deceased beneficiary shall be distributed to said widow. The remaining one-half shall be distributed to the other beneficiaries hereunder as provided for their original shares.

"In case any beneficiary shall have deceased and have no issue and no widow then surviving, his share shall be distributed to the remaining beneficiaries hereunder as herein directed for their original shares.

"During said period of ten years, the net income shall be distributed ratably to the persons who would from time to time be entitled to principal distribution were such trust to terminate."

The Commissioner of Internal Revenue assessed a deficiency estate tax of $39,521.-40, based upon his determination that the value of the inter vivos trust created in 1930 should be included in decedent's gross estate for estate tax purposes.

After the creation of the trust decedent still retained a substantial estate in her own name; at the time of her death in 1941 it was valued at approximately $124,000. Fred Pritzlaff, the husband of decedent, also had a large estate in his name. In 1930, his income was approximately $86,000.

On December 17, 1930, decedent had one unmarried adult child and five married adult children, and eleven grandchildren. At the time of her death in 1941, all six of her children were alive and she had thirteen grandchildren and two great grandchildren. Between 1930 and 1941 decedent lived modestly and the income from the trust exceeded her living expenses to the extent that she made sizable donations to charity and additions to the trust fund. At the date of the creation of the trust decedent had a life expectancy of ten years.

The question here presented is whether the transfers to the trust fund on December 17, 1930, and on various dates subsequent to

March 3, 1931, were intended to take effect in possession or in enjoyment at or after the decedent's death within the meaning of Sec. 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(c).

In May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, the court held that the mere retention by the settlor of the income of the trust for life did not cause the trust to be taxable as a transfer intended to take effect in possession or enjoyment at or after death. On March 3, 1931, Congress amended the law to provide that such a reservation of a life estate would make a trust taxable. In Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858, the court held that the effect of this amendment was prospective only—hence transfers prior to March 3, 1931, are governed by the rule announced in May v. Heiner, supra. Plaintiffs here concede that the assets added to the trust after March 3, 1931, are properly taxable in her gross estate.

Briefly, the pattern of the trust provided that the decedent reserved the income therefrom for her life, and provided for distribution ten years after her death to her children or to their issue by right of representation, or if they had no issue, one-half to their widows and one-half to the other children, or if they had no widows, then all to the other children.

If this were a case of first impression, or if I felt free to apply my own interpretation, I would not hesitate to hold for the plaintiffs, both on the question of reverter and also on the question of the invasion of the corpus of the fund. As a matter of ordinary horse sense, the possibility of a reverter was so remote that it might be considered one chance in a thousand. On the question of the invasion of the corpus, the financial condition of decedent, her husband and her children, was such that the likelihood was slim the trustee, in his discretion, would use such part of the corpus as "shall in the judgment of the trustee be requisite by reason of illness or other emergency, or inadequacy of the income, for the adequate support and/or necessity of such beneficiary."

■ However, I have concluded that this case is controlled by the rules laid down by the Supreme Court in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227; Commissioner v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230; and Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330; and that therefore the transfer here in question was taxable. For the sake of brevity, quotations from the cases just cited will not be given here.

■ The Fidelity case clearly indicates that for the practical purposes of the estate tax, a possibility of reversion by implication of law is just as effective as one expressly retained. In the case at bar, the possibility existed (although exceedingly remote) that all six children might die within ten years after decedent's death, without leaving issue, or widows surviving them, and the trust agreement made no provision for such a situation. If a trust fails for want of a beneficiary, it is the general rule that the property will revert to the grantor or his estate. See Wis. Stats., Sec. 231.18. Also we must consider that in the case at bar the remainderman did not and could not acquire full and complete dominion over the property until the decedent died. Their rights were conditioned upon survivorship.

In Commissioner of Internal Revenue v. Bayne's Estate, 2 Cir., 155 F.2d 475, 476, the court said: "* * * This was not a reversion expressly reserved by the trust instrument; it was a reversion created by implication of law because no beneficiary was named to take in the possible contingency that the grantor should die without descendants and without brothers or sisters who had left descendants. * * * But we think the petitioner is correct in asserting that the recent Supreme Court decisions in estate tax cases have drawn no distinction between express reversions and implied reversions (citing the Fidelity and Estate of Field cases) * * * they (Supreme Court cases) show that the remoteness of the settlor's contingent reversion is irrelevant. 'It is enough if he retains some contingent interest in the property until his death or thereafter, delaying

until then the ripening of full dominion over the property by the beneficiaries.' * * * 'It makes no difference how vested may be the remainder interests in the corpus or how remote or uncertain may be the decedent's reversionary interest.' * * *"

The Circuit Court of Appeals for this circuit in Commissioner of Internal Revenue v. Estate of Spiegel, 7 Cir., 159 F.2d 257, after referring to Commissioner of Internal Revenue v. Estate of Field, supra, and Fidelity Co. v. Rothensies, supra [159 F.2d 260], said: "In the light of these most recent expressions of the Supreme Court, we think it clear that since there was a possibility that all of the beneficiaries might be dead at the settlor's death, there was a possibility of the trust failing and the property returning to the settlor; that this was such an interest in the property as was not wholly divested by the settlor until his death; that this possibility prevented the full and complete possession and enjoyment of the corpus until the settlor's death; and therefore the corpus was within the provisions of Sec. 811(c) of the Revenue Code, and the Commissioner properly included the entire corpus in the taxable estate of Mr. Spiegel."

Upon the authority of the cases above cited, judgment must go for the defendant.